# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Edward Michael Nero, et al. | : |
| v. | : Civil No. CCB-16-1288 |
| Marilyn Mosby, et al. | : |
| Brian Scott Rice | : |
| v. | : Civil No. CCB-16-1304 |
| Marilyn Mosby, et al. | : |
| Alicia White, et al. | : |
| v. | : Civil No. CCB-16-2663 |
| Marilyn Mosby, et al. | : |

## **MEMORANDUM**

This is a consolidated civil action arising out of criminal prosecutions against several police officers after the death of Freddie Carlos Gray Jr. ("Gray") in Baltimore, Maryland. The court has before it Defendant Samuel Cogen's Renewed Motion to Dismiss [ECF No. 91],[1] which has been fully briefed by the parties. No oral argument is necessary to resolve the motion. Local Rule 105.6 (D. Md. 2016). For the reasons that follow, the motion will be granted.

---

[1] Unless otherwise indicated, ECF references are to the lead case, *Nero et al. v. Mosby et al.*, CCB-16-1288.

## BACKGROUND

The court provides only a brief summary of the factual allegations. A full discussion is contained in the Corrected Memorandum and Order Re: Dismissal Motions [ECF No. 54].[2]

Around 9:15 AM on April 12, 2015, Baltimore City police officers detained and arrested Gray for allegedly possessing an illegal knife under the Baltimore City Code. Corrected Mem. & Order at 47–48. The officers placed him in the back of a police wagon. *Id.* at 48. At the time of the arrest, Gray was not suffering from any medical emergency. *Id.*

The police wagon made four stops before reaching the police station. *Id.* One block south of the arrest location, officers removed Gray from the wagon, switched his handcuffs for flex cuffs, and placed shackles on his legs. *Id.* at 49. At both of the final two stops, Gray asked for medical assistance. *Id.* at 49–51. When the wagon arrived at the police station, Gray was unresponsive. *Id.* He was transported to the University of Maryland Shock Trauma Unit for surgery and died a week later from a spinal cord injury. *Id.* After the State Medical Examiner ruled his death a homicide, six officers (Caesar Goodson, Edward Nero, Garrett Miller, Brian Rice, Alicia White, and William Porter) were suspended and arrested on charges relating to his death. *Id.* at 3.

On May 1, 2015, Major Samuel Cogen ("Cogen") of the Baltimore City Sheriff's Office signed the Application for Statement of Charges and corresponding probable cause affidavits for each of the officers charged (collectively, "Application"). *Id.* at 4 n.6. The Application was

---

[2] The court states the facts as alleged by Plaintiffs in each of the most recently filed amended complaints (ECF No. 33-1 in 16-1288; ECF No. 39-2 in 16-1304; ECF No. 31 in 16-2663). These versions were relied upon by Judge Marvin J. Garbis when he authored the Corrected Memorandum and Order Re: Dismissal Motions [ECF No. 54]. Due to Judge Garbis's retirement, the consolidated cases were transferred to the undersigned on July 13, 2018.

submitted to a Maryland state court Commissioner, who approved it and issued warrants for the officers' arrests. *Id.* at 4.

The same day, Marilyn Mosby ("Mosby"), the State's Attorney, held a press conference to announce that she had conducted an independent investigation of Gray's death and planned to pursue charges against the six officers. *Id.* at 4–5. She read verbatim from the Application. *Id.* at 4, 23. She explained that accusations against the six offers were not an indictment of the entire police force and that the case would not harm the working relationship between police and prosecutors in the state. *Id.* at 5 n.8, n.9. She also called for peace. *Id.* at 6 n.10.

Following indictments by a grand jury, none of the six officers was convicted of any crime. Three officers proceeded to a bench trial and were acquitted, and one officer proceeded to a jury trial but the jury could not reach a unanimous verdict. *Id.* at 7. Charges against that officer and two others ultimately were dismissed. *Id.*

Subsequently, five of the six officers filed lawsuits against Mosby, Cogen, and the State of Maryland in federal court.[3] Plaintiffs' legal theories included false arrest and false imprisonment, malicious prosecution, abuse of process, defamation, false light, conspiracy, Section 1983 violations of the Fourth and Fourteenth Amendments, and violations of the Maryland Declaration of Rights Articles 24 & 26. The cases were consolidated in this court with *Nero* as the lead case.

Defendants sought dismissal of all claims. Following oral argument, this court dismissed all claims except malicious prosecution (based on Section 1983 violations of the Fourth

---

[3] *See* case numbers 16-1288 (Nero and Miller), 16-1304 (Rice), and 16-2663 (White and Porter). The sixth officer, Caesar Goodson, Jr., is not a party to these cases.

3

Amendment, the Maryland Declaration of Rights, and state common law), defamation, and false light. *Id.* at 46. The court also dismissed all claims against the State of Maryland. *Id.*

Mosby appealed the decision on February 3, 2017. On May 7, 2018, the Fourth Circuit reversed this court's decision, holding that all malicious prosecution claims against Mosby were barred by absolute prosecutorial immunity. *See Nero v. Mosby*, 890 F.3d 106, 119–24 (4th Cir. 2018). The Fourth Circuit also found that Mosby's press conference statements were made within the scope of her employment and without malice or gross negligence so that she was entitled to statutory immunity under the Maryland Tort Claims Act ("MTCA") for the defamation and false light claims. *Id.* at 126–31.

The Fourth Circuit did not address any of the claims relating to Cogen or the State of Maryland.[4] Following this decision, Cogen moved to dismiss all remaining claims against him.

## ANALYSIS

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d

---

[4] "The Officers also sued Major Cogen and the State of Maryland, but because neither is a party to this appeal, we need not address the claims against them here." *Id.* at 116 n.2.

4

435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Following the *Nero* decision, Cogen is the remaining defendant in this case. The only pending claims against him are the malicious prosecution claims (based on Section 1983 violations of the Fourth Amendment, the Maryland Declaration of Rights, and state common law) and the defamation and false light claims. Corrected Mem. & Order at 46, ECF No. 54.

### A. Section 1983 Claim

The court will dismiss Plaintiffs' Section 1983 claim because the Fourth Circuit decision leaves little room for doubt that probable cause existed to bring charges against the Plaintiffs. Furthermore, Cogen is entitled to qualified immunity.

#### 1. Probable Cause & Lack of Malice

A "malicious prosecution" claim brought under Section 1983 is simply "a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000). Plaintiffs

5

must establish "(a) a criminal proceeding instituted . . . by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause . . . and (d) 'malice', or a primary purpose in instituting the proceeding other than that of bringing an offender to justice." *Exxon Corp. v. Kelly*, 281 Md. 689, 693, 381 A.2d 1146, 1149 (1978).

Probable cause exists when "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Probable cause is "'a probability or substantial chance of criminal activity, not an actual showing of such activity,' and it is assessed based on the totality of the circumstances." *Nero*, 890 F.3d at 130 (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 243 n.13 (1983)).

There is no doubt that the Plaintiffs received favorable terminations of their criminal proceedings, either by acquittal or dismissal of charges. As to the third prong, however, the Fourth Circuit in *Nero* strongly suggested–if not explicitly stated–that the Application signed by Cogen was supported by probable cause. *Id.* at 129–30.[5]

"The gravamen of the Officers' complaints is that Mosby and her office conducted an investigation into Gray's death, and despite finding no evidence of criminal wrongdoing, Mosby either instructed Cogen to file false charges or erroneously advised him that probable cause supported the charges." *Id.* at 118. However, when discussing allegedly false statements in the Application, the Fourth Circuit explained that "the Officers offer no facts to support their

---

[5] Although the Fourth Circuit's discussion was about Mosby's claims in the defamation and false light context, the reasoning is persuasive here because the Application that Mosby read at the press conference was the same Application that Cogen wrote and signed. *Id.* at 115 (Mosby "read the full statement of probable cause verbatim" at the press conference).

6

assertion that Mosby knew that any of her statements were false or seriously doubted their veracity." *Id.* at 129. The Court continued:

> [The alleged factual omissions] do not negate probable cause, let alone establish that the Officers had no knowledge of Gray's condition. Probable cause is "a probability or substantial chance of criminal activity, not an actual showing of such activity," and it is assessed based on the totality of the circumstances . . . . [W]e do not see how the Officers' proffered facts preclude "a probability or substantial chance" the Officers knew Gray needed medical attention and failed to act.

*Id.* at 130 (citation omitted). *See also id.* at 131 (Plaintiffs' "allegations, accepted as true, do not even negate that Mosby had probable cause to charge them"). This court sees no reason to apply a different probable cause analysis to Cogen, who played a lesser role in the events and whose only "hook" for liability is the Application itself.

Plaintiffs also fail to show that Cogen's drafting or signing of the Application was motivated by malice. Judge Garbis already found "no plausible claim that either Defendant had actual personal malice toward any Plaintiff." Corrected Mem. & Order at 13. Although the court left open the possibility that malice could be inferred from the lack of probable cause, *see DiPino v. Davis*, 354 Md. 18, 55, 729 A.2d 354, 374 (1999) ("malice, though a separate element of the tort, may be inferred from the lack of probable cause"), *Nero* precludes such a finding. 890 F.3d at 129–30.

Accordingly, the court finds that the amended complaints fail to state a claim of malicious prosecution against Cogen.

### 2. Qualified Immunity

The Section 1983 claim against Cogen also must be dismissed because he is entitled to qualified immunity. "Qualified immunity balances two important interests—the need to hold

7

public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In particular . . . qualified immunity protects law officers from 'bad guesses in gray areas,' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). Qualified immunity is a defense from suit, not simply liability, and is effectively lost if a matter is improperly permitted to go to trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Therefore, entitlement to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Two inquiries aid a court in determining whether a public official is entitled to qualified immunity. Although the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001) directed a rigid approach to the inquiries involved, the requirement that the two-prong analysis must be "considered in proper sequence," *id.* at 200, has since been revised. Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

The first prong is whether "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. The second prong is whether the right was "clearly established" at the time of the events at issue. *Id.* If the right was not clearly established, the qualified immunity doctrine shields the defendant officer from liability. *Pearson*, 555 U.S. at 243–44.

Here, Plaintiff's allegations do not show that Cogen violated a constitutional right, i.e., that he signed the Application without probable cause, knowing it contained false statements and material omissions.[6] For example, Plaintiffs allege that Cogen knew there was a lack of probable cause but still charged that the officers loaded Gray into the wagon without securing him with a seatbelt, in violation of a Baltimore Police Department General Order. *See* ECF No. 33-1 ¶¶ 73–75 in 16-1288, ECF No. 39-2 ¶¶ 42–44 in 16-1304, and ECF No. 31 ¶ 87(a) in 16-2663 (contending no probable cause because the General Order was disseminated only nine days before Gray's injury and violating a General Order is not a criminal act). Plaintiffs also allege that Cogen followed Mosby's erroneous instructions and legal advice to file the Application. *See* ECF No. 33-1 ¶¶ 76–77 in 16-1288, ECF No. 39-2 ¶¶ 45–46 in 16-1304, and ECF No. 31 ¶¶ 101–02 in 16-2663. These allegations, however, do not plausibly show that Cogen signed and submitted the Application knowing that it contained false statements and material omissions. At most, they show only that Plaintiffs disagree with the legal conclusions the defendants reached.

Plaintiffs also contend that the Application contained false statements and material omissions. *See, e.g.*, ECF No. 33-1 ¶¶ 65, 67 in 16-1288, ECF No. 39-2 ¶¶ 34, 36 in 16-1304, ECF No. 31 ¶¶ 73, 76, 85–88 in 16-2663 (alleging that the Application included false statements about the legality of the knife, Gray's medical condition, and the officers' efforts to provide him medical aid); ECF No. 31 ¶¶ 85–87, 89–93, 98–100 in 16-2663 (alleging that the Application omitted material facts about the officers' duty to restrain Gray in a seatbelt and about Gray's medical condition at various points of the wagon ride). However, the *Nero* Court rejected these arguments in the defamation and false light context. 890 F.3d 129–30.

---

[6] This court previously stated that the qualified immunity question required further factual development. Corrected Mem. & Order at 44, ECF No. 54. However, the Fourth Circuit now has provided sufficiently clear guidance, and no additional factual development is needed.

9

The rest of the allegations are conclusory and are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. *See, e.g.*, ECF No. 33-1 ¶ 77 in 16-1288 (notwithstanding Mosby's legal advice, Cogen "knew, or should have known, that no probable cause existed"); ECF No. 31 ¶ 128 in 16-2663 (Defendants "sought to falsely charge, arrest and imprison" White and Porter); *id.* ¶ 193 (alleging Defendants had a political agenda to assuage an angry constituency, quell riots, and further their own personal ambitions). They cannot support a finding of any constitutional violation.

Moreover, even if the probable cause determination was "mistaken," Cogen's actions were "nevertheless objectively reasonable" under the facts of this case. *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016). Although Cogen followed Mosby's instructions and legal advice when drafting and filing the Application and statement of probable cause, doing so was objectively reasonable because there is no evidence that those statements were false or contained material omissions in the first place. *Nero*, 890 F.3d 129–30 (finding that none of the allegedly false statements were shown to be false and that none of the omitted facts identified in the complaints is material). "So long as the application includes all *material* facts, a prosecutor need not also present the defendant's defense." *Id.* at 130 (emphasis in original). Cogen did all that was required of him under the circumstances to enjoy qualified immunity.

### B. State Law Claims

The Maryland Tort Claims Act ("MTCA") provides in relevant part:

> "State personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence[.]"

Md. Code Ann., Cts. & Jud. Proc. § 5-522(b).

10

MTCA immunity applies to all tort claims, including malicious prosecution claims. *See, e.g., Okwa v. Harper*, 360 Md. 161, 183 n.11, 757 A.2d 118, 130 n.11 (2000) (analyzing the applicability of MTCA to malicious prosecution claims); *Hines v. French*, 157 Md. App. 536, 561, 852 A.2d 1047, 1061 (2004) (amended MTCA "expanded coverage to all types of tort claims, including constitutional and intentional torts"). MTCA immunity should be decided at this stage because it confers immunity from suit, and the "right not to bear the burdens of litigation [] cannot be 'effectively vindicated' after litigation." *Nero*, 890 F.3d at 121, 124–25.

"Consistently, the MTCA 'provides that a State employee acting within his or her scope of employment and without malice or gross negligence is immune from suit.'" *Cooper v. Rodriguez*, 443 Md. 680, 708, 118 A.3d 829, 845 (2015). "Malice" for MTCA purposes "requires a showing that the official intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately injure the plaintiff." *Talley v. Farrell*, 156 F. Supp. 2d 534, 545 (D. Md. 2001) (internal quotations omitted) (quoting *Green v. Brooks*, 125 Md. App. 349, 377, 725 A.2d 596, 610 (1999)). "Gross negligence" in this context has been defined as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Cooper*, 443 Md. at 686, 118 A.3d at 832–33 (quoting *Barbre v. Pope*, 402 Md. 157, 187, 935 A.2d 699, 717 (2007)). Plaintiffs must point to specific facts that raise an inference of gross negligence because "conclusory allegations are not enough[.]" *Barbre*, 402 Md. at 188, 935 A.2d at 717.

Although the Fourth Circuit declined to decide whether Mosby was entitled to MTCA immunity for the state malicious prosecution claims, *Nero*, 890 F.3d at 121, the opinion considered the applicability of the MTCA to the defamation and false light claims. *Id.* at 125–31. The Circuit found that the MTCA barred these press conference tort claims, because Mosby acted within the scope of her employment and without malice or gross negligence. *See id.* at 127 ("Nothing in the complaints even suggests that Mosby spoke at the press conference out of 'hate' or 'to deliberately and willfully injure' the Officers."); *id.* at 131 ("[T]he Officers' allegations cannot support a finding of gross negligence. Although questions of gross negligence are typically for the factfinder to decide, we hold as a matter of law that nothing in the complaints gives rise to an inference that Mosby recklessly disregarded the consequences of her statements [at the press conference].") (citation omitted).

The court finds that the MTCA analysis for Cogen is substantially the same, and that the *Nero* decision requires the dismissal of the remaining state law claims against him.

### 1. State Law Malicious Prosecution Claims

As sheriff of Baltimore City, and under the facts of this case, Cogen is treated as "State personnel" for MTCA purposes, *see* Md. Code Ann., State Gov't § 12-101(a)(6), and the parties cannot seriously dispute that drafting and submitting the Application is within the scope of his duties as a sheriff. Further, Plaintiffs have failed to state facts showing that Cogen acted with malice or gross negligence.

Allegations of malice by Cogen are wholly unsupported by facts. *See* Corrected Mem. & Order at 13 ("There is no plausible claim that either Defendant had actual personal malice toward any Plaintiff."); *id.* at 41 ("There is no allegation that Defendants' actions were motivated

12

by hate, or an intent to injure Plaintiffs."). Moreover, the court is guided by the *Nero* decision and sees no reason for Cogen to be treated differently from Mosby with regard to gross negligence. *Nero*, 890 F.3d at 131. The allegations articulated against Cogen are less detailed and more conclusory than the allegations articulated against Mosby. Cogen also played a lesser role in the overall investigation and signed the very same Application which Mosby read at the press conference. Accordingly, Cogen is entitled to MTCA immunity for the remaining state malicious prosecution claims against him.[7]

### 2. Defamation and False Light

The defamation and false light claims against Cogen also must be dismissed.[8] The dispositive question is whether Cogen acted with gross negligence or reckless disregard for any allegedly false statements or material omissions in the Application. Applying an analysis similar to the *Franks* test, the Fourth Circuit found no support for the claim that the Application contained false statements or material omissions. *Nero*, 890 F.3d at 128–30. Indeed, the Circuit noted that "the Officers' narrative of the events of April 12, 2015, is so similar to that described in the application for Statement of Charges that it almost confirms the accuracy of the information Mosby reported." *Id.* at 129. Moreover, some of Plaintiffs' arguments were rejected as legal issues, not factual statements that could be proven true or false. *Id.* at 129 ("The lawfulness of the knife is a legal question—not a discrete fact that can be proven true or false.").

---

[7] These claims also must be dismissed because the court already has found that probable cause existed to charge the officers. *See supra* Section A.1.

[8] Judge Garbis previously expressed doubt that Plaintiffs have adequately stated defamation and false light claims against Cogen. *See* Corrected Mem. & Order at 15 n.29, ECF No. 54 ("There are no factual allegations supporting a plausible defamation or invasion of privacy (false light) [claim] against Cogen for any public statement made by him.").

13

The *Nero* Court concluded that "[t]he Officers cite no facts showing that Mosby spoke at the press conference with malice or gross negligence, as required by the MTCA." *Id.* at 131.

Likewise, Cogen also enjoys MTCA immunity for these tort claims because he did not act with malice or gross negligence. Cogen wrote and signed the same Application that Mosby read verbatim at the press conference, and the "only statements that the Officers challenge as tortious are those Mosby read from the application for Statement of Charges." *Id.* at 128. The court declines to accept Plaintiffs' argument that Cogen's written statements in the Application should be treated differently.

These claims also will be dismissed for failure to meet required elements for defamation and false light. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964) (""[A] public official [cannot] recover[] damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not."); *Furman v. Sheppard*, 130 Md. App. 67, 77, 744 A.2d 583, 587 (2000) (a claim for false light requires that the actor "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiffs] would be placed").

***

Finally, Plaintiffs ask for leave to amend their pleadings. *See* Pls.' Opp. at 7, ECF No. 96. However, they have neither stated a basis for amendment nor demonstrated how they would overcome the deficiencies that warrant dismissal of these claims.

## CONCLUSION

For the reasons stated above, the court will grant Defendant Samuel Cogen's Renewed Motion to Dismiss [ECF No. 91].

A separate Order follows.

8/23/18
Date

/s/ CCB
Catherine C. Blake
United States District Judge